UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 30, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Briana H. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-1288-CDA

Dear Counsel:

On May 16, 2023, Plaintiff Briana H. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim. ECF 1. This case was then referred to a magistrate judge with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). The Court has considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 15, 18). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the following reasons, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title XVI application for Supplemental Security Income ("SSI") benefits on October 27, 2020, alleging a disability onset of May 5, 2020. Tr. 17, 178–86. Plaintiff's claim was denied initially and on reconsideration. Tr. 100–04, 106–07. On April 21, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 32–58. On November 30, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 14–31. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on May 16, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, the Court substitutes Commissioner O'Malley as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

## II.    THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The SSA evaluates disability claims using a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. Under this process, an ALJ determines, in sequence, whether a claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since she applied for benefits. Tr. 19. At step two, the ALJ found that Plaintiff suffered from "the following severe impairments: autism spectrum disorder, depressive/bipolar disorder, and anxiety disorder." *Id.* The ALJ also determined that Plaintiff suffered from obesity but did not specify whether this impairment was severe. Tr. 20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform simple, routine, and repetitive tasks not a production rate pace as well as make simple work-related decisions. She can have frequent interaction with supervisors, occasional interaction with coworkers, and no interaction with the general public.

Tr. 22. The ALJ found that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 25. The ALJ then concluded that Plaintiff was not disabled. Tr. 26.

## III.    LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The [ALJ's] findings . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla" and "somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court considers whether the ALJ analyzed the relevant evidence and sufficiently explained their decision. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision[.]").

IV. **ANALYSIS**

On appeal, Plaintiff argues that the RFC assessment is not supported by substantial evidence for multiple reasons. ECF 11, at 6. Specifically, she contends that: (1) the ALJ did not weigh opinion evidence in accordance with applicable regulations; (2) the ALJ failed to define the meaning of "production pace" work; (3) the ALJ failed to explain how a production-pace restriction accommodates Plaintiff's moderate limitations in maintaining concentration, persistence, and pace ("CPP"); and (4) the ALJ failed to "investigate the effect of Plaintiff's moderate limitations on her ability to remain on task in a work environment." *Id.* at 6–17. Defendant counters that the ALJ: (1) adequately evaluated the opinion evidence; (2) adequately accounted for Plaintiff's CPP limitations and ability to remain on task; and (3) defined "production rate pace" in their hypothetical question to the vocational expert ("VE"). ECF 15, at 5–18.

A. The ALJ properly considered Dr. Anderson's report.

Plaintiff is correct that the ALJ, in evaluating Dr. Anderson's statement, cited to the incorrect regulation; however, the ALJ ultimately properly considered Dr. Anderson's Encounter Report. Initially, the ALJ stated that they considered medical opinions "in accordance with the requirements of 20 CFR 416.920c." Tr. 22. But, in considering Dr. Andersons' statement, the ALJ cited to 20 C.F.R. § 416.927(d)—the previous regulation that applies to claims filed before March 27, 2017—rather than the correct provision, 20 C.F.R. § 416.920b(c), for claims filed after March 27, 2017. The ALJ correctly found Dr. Anderson's statement that Plaintiff was "100% disabled due to her autism" was "an issue reserved to the Commissioner." Tr. 25. The ALJ properly determined that the statement was "neither inherently valuable nor persuasive" and therefore had "not provided any written analysis on it." Tr. 25. Because the old and new regulations regarding the treatment of statements on issues reserved to the Commissioner are materially the same, the ALJ's failure to cite to the correct regulation is inconsequential. *Compare* 20 C.F.R. § 416.927(d) (Statements by a medical source that a claimant is disabled "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[.]"), *with* 20 C.F.R. § 416.920b(c) (Because statements that a claimant is disabled are "inherently neither valuable nor persuasive to the issue of whether you are disabled . . . under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision[.]").

Further, the ALJ did not err by excluding an analysis of the supportability and consistency of Dr. Anderson's statement. The SSA defines a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" four abilities: (1) the ability to "perform [the] physical demands" of work activities; (2) the ability to "perform [the] mental demands" of work activities; (3) the ability to "perform other demands" of work; and (4) the ability to "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). An ALJ is required to "articulate . . . how persuasive [they] find all of the medical opinions" in a claimant's case record using a set of factors. 20 C.F.R. §§ 404.1520c, 416.920c. No such articulation requirement exists, however, for "[o]ther medical evidence," which is "evidence from a medical source that is not objective medical evidence or a medical opinion,

including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Plaintiff argues that Dr. Anderson's report regarding Plaintiff's limitations—that she "lives in the household with her parents . . . she cannot live alone or care for herself[,]" is unable to "navigate alone in the community[,]" and works part-time "under supervision"—are "traceable to work-related restrictions." ECF 11, at 8-10. This argument is unavailing. As Defendant correctly asserts, the ALJ "appropriately declined to analyze [Dr. Anderson's report] under 20 C.F.R. § 416.920c" because it was not a medical opinion, as defined in 20 C.F.R. § 416.913(a)(2), as it did not include any work-related restrictions. ECF 15, at 11-12. Dr. Anderson's report did not concern Plaintiff's ability to perform the mental demands of work despite her impairments and, therefore, did not constitute a medical opinion. As such, the ALJ did not err by failing to assess the persuasiveness of Dr. Anderson's report under 20 C.F.R. § 416.920c.

While the ALJ was not required to evaluate the persuasiveness of Dr. Anderson's statements, they were still required to consider them: an ALJ must "consider all evidence in [a] case record" in reaching a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). A review of their decision makes clear that the ALJ did so. The ALJ explicitly considered Dr. Anderson's statement that Plaintiff was "100% disabled due to her autism." Tr. 25. The ALJ further considered Dr. Anderson's statement that Plaintiff reported she "had difficulty verbally and physically communicating with people, resulting in anxiety and depression[,]" and that she "became distracted easily." Tr. 23. The ALJ noted that Plaintiff's "exam [with Dr. Anderson] showed normal mood, affect, orientation, and alertness but abnormal thought content and activity analysis." Tr. 23. As such, the Court is satisfied that the ALJ afforded adequate consideration to Dr. Anderson's report in reaching their decision.

B. <u>The ALJ properly evaluated Dr. Barksdale's medical opinion.</u>

The ALJ properly evaluated Dr. Barksdale's medical opinion. For claims filed after March 27, 2017, an ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c). An ALJ must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions . . . in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ must "explain how [the ALJ] considered the supportability and consistency factors" when assessing a source's medical opinion. *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

As to Dr. Barksdale's opinion, Plaintiff first contends that the ALJ failed to discuss the consistency between Dr. Barksdale's opinion and Dr. Anderson's report "with regard to [Plaintiff's] need for supervision throughout [the] workday." ECF 11, at 12; *see* ECF 18, at 4-6. The Court rejects this argument. The ALJ considered the medical evidence of Dr. Barksdale and found it persuasive. Tr. 24. As to consistency, the ALJ acknowledged that Dr. Barksdale was Plaintiff's treating therapist and found Dr. Barksdale's opined limitations—that Plaintiff "required a supportive supervisor though she could understand, carry[] out and remember instructions," and was "uncomfortable in disordered, loud, and crowded environments"—consistent "with the evidence as a whole for the reasons given to Dr. Leizer's opinion." Tr. 24. There, the ALJ noted the evidence that Plaintiff "experienced difficulty with social interactions due to autism spectrum disorder in addition to trouble concentrating, poor sleep, and feelings of worthlessness due to depression and anxiety." Tr. 24 (citing Ex. B15F (Dr. Anderson's Report)). The ALJ also stated Plaintiff's "Mental Status Examination did not display evidence of a significant cognitive impairment and the most recent exam was grossly normal." Tr. 24. (citing Ex. B15F). The ALJ further noted that Plaintiff "read fantasy books, wrote fantasy stories and music, worked part-time, and attended church." Tr. 24. As such, contrary to Plaintiff's assertion otherwise, the ALJ properly evaluated the consistency of Dr. Barksdale's opinion by considering both medical and nonmedical sources and even explicitly cited to Dr. Anderson's report.[3]

Next, Plaintiff asserts that the ALJ, in finding Dr. Barksdale's opinion persuasive, should have included Dr. Barksdale's opined limitation that Plaintiff "required a supportive supervisor" into the RFC. ECF 11, at 11-13. The Court finds this argument unavailing. "The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Although the ALJ did not replicate Dr. Barksdale's opinion verbatim in crafting the RFC, such a discrepancy does not warrant remand. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale."); *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."). Here, the ALJ acknowledged that Plaintiff "alleged that she has difficulty engaging in social activities, difficulty with social communication, and spending time in crowds." Tr. 20. The ALJ observed, however, that Plaintiff "is also able to shop, spend time with family, get along with coworkers, and deal appropriately with authority." Tr. 20. The ALJ therefore

---

[3] Although the ALJ did not discuss the supportability of Dr. Barksdale's opinion, Plaintiff does not challenge the ALJ's evaluation of the supportability prong. Plaintiff fails to assert how this failure by the ALJ, who ultimately found Dr. Barksdale's opinion persuasive, amounts to harmful error. Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). As such, Plaintiff fails to establish that this error necessitates remand.

concluded that Plaintiff had moderate limitations in interacting with others. Tr. 20. The ALJ accommodated for Plaintiff's social limitations by restricting Plaintiff to "frequent interaction with supervisors, occasional interaction with coworkers, and no interaction with the general public." Tr. 22. Plaintiff certainly disagrees with how the ALJ considered the evidence related to Plaintiff's need for a supportive supervisor. But Plaintiff points to the exact evidence that the ALJ discussed in contemplating their narrative regarding her mental impairments. Whether I could or would have found differently than the ALJ is of no moment. This Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' [I] defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

    C.  <u>The ALJ properly defined the term "production rate pace".</u>

The ALJ properly defined "production rate pace". Plaintiff relies on *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) for the proposition that remand is warranted where a limitation proposed by the ALJ in his hypothetical is not defined by regulation or the DOT. ECF 11, at 13-14. In *Thomas*, the Fourth Circuit remanded, in relevant part, because the ALJ's failure to define the terms "production rate or demand pace" frustrated appellate review because "the terms do not seem to be especially common—certainly not common enough for [the court] to know what they mean without elaboration." 916 F.3d at 312. While the phrase "production rate pace" is used in an appendix to the DOT, a definition is not provided. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C (4th ed. 1991), 1991 WL 688702. Therefore, *Thomas* directs that the term "production rate pace" requires further explanation. But here, unlike in *Thomas*, the ALJ defined "production rate" in the hypothetical question to the VE explaining that the "no production rate requirement" meant "assembly line work." Tr. 51. As such, because the ALJ explained the meaning of "production rate" to the VE, the Court finds that the ALJ adequately explained the term "production rate pace." *See Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) ("While the ALJ did not include the term 'assembly-line work' in her RFC, her inclusion of the term in the hypothetical provides enough clarity for this Court's review."); *cf. Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) (remanding to allow the ALJ to clarify the terms "production rate pace or strict production quotas" in the "RFC assessment and hypothetical to the VE, in order to establish that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion"); *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (remanding where "the ALJ offered no explanation of her own for what she meant when she used the phrase 'non-production oriented work setting' in assessing" the RFC).

    D.  <u>The ALJ accounted for Plaintiff's CPP limitations and ability to remain on task.</u>

The Court finds that the ALJ properly accounted for Plaintiff's moderate CPP limitations and amply supported the RFC determination with substantial evidence. A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments,

severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas*, 916 F.3d at 311 (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Plaintiff argues that the ALJ failed to explain how they determined that Plaintiff "can perform simple, routine, and repetitive tasks not a production rate pace" and how these restrictions accommodated for Plaintiff's impairments and CPP limitations. ECF 11, at 14-17; ECF 18, at 2-4. Plaintiff also asserts that the ALJ failed to explain how, despite Plaintiff's CPP limitations, she could remain on task during the workday. ECF 11, at 16-17.

Here, at step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 21. The ALJ's RFC states Plaintiff "can perform simple, routine, and repetitive tasks not a production rate pace as well as make simple work-related decisions." Tr. 22. The ALJ's reliance on the opinion of Dr. Leizer in crafting the RFC provides support for the CPP limitations incorporated therein and enables the Court to perform meaningful review. State examiner Dr. Leizer completed a Psychiatric Review Technique and determined that Plaintiff had a moderate CPP limitation.

Tr. 23, 93. The ALJ noted that Dr. Leizer opined that Plaintiff could "perform simple, routine tasks." Tr. 23. Specifically, Dr. Leizer found that Plaintiff was "not significantly limited" in her ability to carry out very short and simple instructions, carry out detailed instructions, ability to sustain an ordinary routine without special supervision, make simple work-related decisions, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 95. The ALJ found Dr. Leizer's opinion persuasive. Tr. 24.

Moreover, the ALJ considered a previous ALJ's decision that Plaintiff "could perform simple, routine, and repetitive tasks in a low-stress work environment with low-stress defined as no strict production quotas" and found it "generally persuasive." Tr. 24-25. The ALJ subsequently crafted an RFC incorporating a limitation to simple, routine, and repetitive tasks and a restriction from working at a production rate pace—the same provisions set forth in Dr. Leizer's opinion and the previous ALJ's decision prohibiting "strict production quotas." Tr. 22-24. Accordingly, the Court determines that Dr. Leizer's opinion and the previous ALJ's decision "provided substantial support" for the RFC assessed in this case and that the ALJ's adoption of Dr. Leizer's opinion and the previous ALJ's decision permits meaningful review. Tr. at 22-24; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

This Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See Jackie W.*, 2019 WL 5960642, at *4. In *Jackie W.*, the Court held that an ALJ's inclusion of a restriction from "assembly-line work" in a hypothetical to a VE was sufficient to account for a claimant's moderate CPP limitation even though the ALJ did not include the term "assembly-line work" in the RFC. *Id.* "Therefore, considering the ALJ's hypothetical to the VE, the RFC adequately accounted for Plaintiff's limitation in concentration, persistence, or pace." *Id.* Other decisions have found similarly worded limitations sufficient. *See, e.g.*, *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that an ALJ accounts for Plaintiff's moderate CPP limitations and the ability to stay on task when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Moreover, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016). A careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provisions accounting for Plaintiff's moderate CPP limitations and ability to stay on task. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

*Briana H. v. O'Malley*
Civil No. 23-1288-CDA
September 30, 2024
Page 9

        E.   <u>The ALJ's RFC presented to the VE is sufficient.</u>

      Plaintiff contends that the VE's testimony regarding off-task time, excessive breaks, and frequent supervision, meaning a supervisor frequently checking and redirecting, should have been incorporated into the RFC. ECF 11, at 12, 16-17; *see* Tr. 52, 55. As explained above, the ALJ adequately accommodated for Plaintiff's CPP and social limitations in the RFC. Even though the ALJ contemplated Plaintiff's time off-task and need for breaks "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)). Further, Plaintiff's attorney posed hypotheticals to the VE regarding a frequent supervision limitation, but an ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ."). As such, the ALJ did not err by failing to incorporate the VE's testimony of these limitations into the RFC.

        V.   **CONCLUSION**

      For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Defendant's motion for summary judgment, ECF 15, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

                                                Sincerely,

                                                /s/

                                              Charles D. Austin
                                              United States Magistrate Judge